UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| Jody G[1]., | ) |
| --- | --- |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL NO. 1:18cv200 |
|  | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
|  | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.       The claimant meets the insured status requirements of the Social Security Act

through March 31, 2017.

2.  The claimant has not engaged in substantial gainful activity since March 10, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: ACL tear of the right knee - status post repair surgery; torticollis/cervical and lumbar spine pain; tendonitis of the left shoulder, elbow, and wrist/bursitis of the left shoulder; occipital neuralgia; headaches; morbid obesity; major depressive disorder; bipolar II disorder; anxiety disorder/social anxiety; agoraphobia; posttraumatic stress disorder (PTSD); panic disorder; generalized anxiety disorder; intermittent explosive disorder; and cannabis abuse (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is limited to occasional operation of foot controls on the right; is limited to occasional overhead reaching bilaterally; is limited to occasional climbing of ramps and stairs; cannot climb ladders, ropes, or scaffolds; is limited to occasional balancing, stooping, kneeling, crouching, and crawling; is limited to repetitive tasks, but not at a production rate pace, such as assembly line work; is limited to simple, work-related decisions; is limited to occasional interaction with supervisors and co-workers; cannot interact with the public; and is limited to occasional changes in a routine work setting.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 21, 1971 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled." whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569. 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 82- 91).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on December 21, 2018. On March 22, 2019 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred in not incorporating limitations from all her medically determinable impairments, both severe and non-severe, into the RFC, and erred in not considering the combined impact thereof. Specifically, Plaintiff claims that the ALJ's hypothetical and RFC did not account for her limitations in concentration, persistence, and pace, contrary to the principles set forth in *Yurt v. Colvin*, 758 F.3d. 850 (7thCir. 2014).

At step two of the five-step sequential evaluation process, an ALJ must determine whether a claimant's impairments are "severe," and at step three, whether those impairments meet or medically equal a listing. *See* 20 C.F.R. §§ 404.1520(c), 404.1520(d), 404.1525, 404.1526, 416.920(c), 416.920(d), 416.925, 416.926. The Agency follows a "special technique" for evaluating mental impairments. In contemplating steps two and three, the ALJ assesses the claimant's degree of functional limitation in four broad functional areas – understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the claimant's degree of limitation is rated "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," then the mental impairment is typically found not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, the agency will determine whether it meets or equals a listed impairment. *Id*. If the claimant's mental impairment is severe, but does not meet or equal a listing, the agency assesses the claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

As relevant here, at step three of the sequential evaluation process, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace (Tr. 84). The ALJ noted that Plaintiff had mental impairments including major depressive disorder, bipolar II disorder, anxiety disorder/social anxiety, agoraphobia, posttraumatic stress disorder (PTSD), panic disorder, generalized anxiety disorder, intermittent explosive disorder, and cannabis abuse (Tr. 87). The ALJ also noted that in March of 2015, Plaintiff had a psychological consultative examination with Dr. Boen, where she reported that she was applying for disability benefits primarily due to PTSD, panic attacks, anxiety, and depression (Tr. 87). The ALJ stated that Dr. Boen's mental status examination revealed that Plaintiff was able to recall three objects immediately and in five minutes, she was alert and oriented to all spheres, her affect was nervous with paranoid ideation in her thought form, she cried off and on throughout the exam, her consciousness was normal, and there was mild impairment in concentration (Tr. 87, 644-645). The ALJ also noted that Dr. Boen found that Plaintiff's short term memory was mildly below normal, her long term memory was normal, her intelligence and fund of information were normal, and she displayed normal insight. *Id.* The ALJ summarized that Dr. Boen's findings supported his determination that Plaintiff had only moderate limitations in concentration, persistence or pace, because while Dr. Boen determined that Plaintiff's thought form contained paranoid ideation, she was nevertheless alert and oriented to all spheres, her concentration was mildly below normal, her insight was normal, and her immediate recall was normal (Tr. 84, 644-645).

The ALJ also noted that Plaintiff engaged in a variety of daily and public activities that perhaps indicated a greater level of functioning than alleged (Tr. 87). For example, the ALJ noted that Plaintiff reported that she engaged in public activities such as going shopping by herself and

visiting the nail salon, going to the Fort Wayne Zoo, attending her daughter's bridal shower and a family reunion, attending her daughter's rehearsal dinner and wedding, and being gone for about one month with her boyfriend (Tr. 87, 662, 952, 958, 1245). The ALJ also noted that Plaintiff testified that her psychiatric medications were helpful (Tr. 87, 136-137).

Before moving to step four of the sequential evaluation process, the ALJ evaluated Plaintiff's RFC and found she could perform medium work, and perform simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work (Tr. 85). Further, the ALJ determined that Plaintiff was limited to simple, work-related decisions and occasional changes in a routine work setting; occasional interaction with supervisors and co-workers; and, could not interact with the public (Tr. 85). At the administrative hearing, the ALJ asked the VE to consider a hypothetical question derived from the RFC finding, regarding an individual who could perform simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work; was limited to simple, work-related decisions; occasional changes in a routine work setting; occasional interaction with supervisors and co- workers; and, could not interact with the public (Tr. 174).

Plaintiff argues that the ALJ's RFC assessment, which she states limited her to simple tasks and decisions, and to routine changes in the work setting, did not fully account for or encompass her deficiencies in concentration, persistence, or pace in violation of the general principle set forth in *Yurt v. Colvin*, 758 F.3d. 850 (7th Cir. 2014).

In *Yurt*, the Court found that the ALJ's hypothetical question was problematic because it did not limit the claimant to low stress positions "or otherwise capture his moderate difficulties;" it merely limited Plaintiff to unskilled tasks. *Id.*

7

While the RFC limitations herein are somewhat better than those criticized in *Yurt*, this court finds that it nevertheless fails to take into account Plaintiff's myriad difficulties. Thus remand is appropriate.

Next, Plaintiff argues that the ALJ's RFC did not account for her carpal tunnel syndrome, upper extremity tendonitis, and bursitis. Specifically, Plaintiff appears to assert that the RFC should have contained at least occasional handling and fingering limitations, and cites medical evidence in support of her argument. Plaintiff also argues that the ALJ's RFC did not account for her occipital neuralgia and related headaches. Plaintiff asserts that the ALJ was required to include additional limitations in the RFC such as the avoidance of headache triggers (such as photophobia), and such as the frequency of the headache triggers as they affected "on task" factors in the RFC.

The determination of the claimant's RFC is an administrative decision that is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). The Commissioner argues that the ALJ properly found that Plaintiff was capable of work at the light exertional level, and that she was limited to occasional operation of foot controls on the right; limited to occasional overhead reaching bilaterally; limited to occasional climbing of ramps and stairs; could not climb ladders, ropes, or scaffolds; limited to occasional balancing, stooping, kneeling, crouching, and crawling; limited to occasional operation of a motor vehicle; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work; limited to simple, work-related decisions; limited to occasional interaction with supervisors and coworkers; could not interact with the public; and, limited to occasional changes in a routine work setting (Tr. 85). SSR 96-8p states that the RFC "assessment must first identify the

8

individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).

In assessing Plaintiff's RFC, the ALJ first acknowledged that Plaintiff testified that she experienced neck pain for several years related to a pinched nerve on the left side of her neck, and she could lift up to a gallon of milk, but not repetitively due to grip problems (Tr. 85, 127-132, 134-135). The ALJ noted that Plaintiff indicated that her neck pain started with a headache and then she could not move her head, which happened twice per month (Tr. 85, 127- 132). The ALJ stated that Plaintiff further testified that she had injections in the back of her neck, which provided relief for roughly two to three weeks, and she also experienced stiffness and soreness in her right knee with associated difficulties with bending her knee (Tr. 85, 127- 132, 137-138). The ALJ also acknowledged that Plaintiff was obese, noting her body mass index (BMI) at 41.21, consistent with morbid obesity (Tr. 86-87, 1131).

The ALJ considered the medical evidence of record in this case regarding Plaintiff's carpal tunnel syndrome, upper extremity tendonitis, and bursitis, and the medical evidence regarding Plaintiff's occipital neuralgia and related headaches. The ALJ noted Plaintiff's history of ACL tear of the right knee - status post repair surgery, torticollis/cervical and lumbar spine pain, tendonitis of the left shoulder, elbow, and wrist/bursitis of the left shoulder, occipital neuralgia, morbid obesity, and headaches, but stated that despite her allegations, the medical evidence was consistent with the assigned RFC (Tr. 86). The ALJ noted that Plaintiff was diagnosed with carpal tunnel syndrome on the left; however, the ALJ found that it was not a severe impairment because there was little evidence of treatment for this condition, or support for any finding that it caused functional limitations. *Id*. As such, the ALJ found that the record did

not document that Plaintiff's carpal tunnel syndrome more than minimally interfered with her ability to engage in basic work-related functions. *Id*. Nevertheless, the ALJ noted that he considered Plaintiff's carpal tunnel syndrome when assessing her RFC (Tr. 86)

Plaintiff argues that the ALJ failed to address Dr. Kidder's opinion that Plaintiff could only use her hands "occasionally," and therefore, failed to include this limitation in the hypothetical to the vocational expert. However, the ALJ did address Dr. Kidder's opinion, and gave it no controlling weight (Tr. 89). The ALJ noted that Dr. Kidder provided little supporting evidence or explanation for his extreme limitations, and his limitations were inconsistent with the medical record as a whole, such as Plaintiff's generally benign diagnostic test results and clinical findings, and her admittance to treating sources and at the hearing that her mostly conservative treatment measures (such as pain medications) were somewhat effective (Tr. 89). . As noted above, Plaintiff suffers from bursitis and tendonitis as well as carpal tunnel syndrome, and has numbness in her left arm. Thus, the ALJ's determination that Plaintiff can perform light work is unsupported by the evidence, requiring remand.

Regarding Plaintiff's occipital neuralgia and related headaches, the ALJ noted that Plaintiff presented to Parkview in December 2015 for an emergency room follow up visit regarding occipital neuralgia (Tr. 86, 888). The ALJ stated that according to Plaintiff, she received a steroid shot, a muscle relaxer, and pain medication for this condition at the emergency room, but she was still unable to move her neck or head because the pain was so bad. *Id.* However, the ALJ noted that upon physical examination, Plaintiff had normal range of motion in her neck, with tenderness over the left occipital area to palpation, and normal neurological findings (Tr. 86, 891).

The ALJ noted that in April 2016, Plaintiff presented to Ms. Jolynn Wann at Parkview for a follow up visit regarding constant left-sided pain in her neck and head (Tr. 86, 1118). Plaintiff relayed that she had been recently given two Percocet pills in the emergency room, and she threw up the pills. *Id*. The ALJ stated that Plaintiff indicated that her neck pain was a recurrent problem, it occurred for the past year on an intermittent basis, it was present on the left side, and she described it as a stabbing sensation. *Id.* Her associated symptoms included headaches, and she admitted that her treatment measures, such as chiropractic care, provided mild relief (Tr. 86, 1118). The ALJ noted that Plaintiff's physical examination revealed decreased range of motion in her cervical spine; she was able to flex slightly and rotate her neck; she appeared to be well developed and well nourished; and, neurological findings were normal. *Id.* The ALJ stated that based on these findings, Ms. Wann diagnosed Plaintiff with cervical spine pain, muscle spasms of the neck, nausea, and non-intractable headache - unspecified type (Tr. 86, 1119).

Plaintiff argues that the ALJ failed to confirm the existence or alleged severity of her headaches. Plaintiff claims that the ALJ missed the fact that episodic headaches, and not constant headaches, characterize occipital neuralgia, which means that citation of a normal exam does not negate the condition. The record clearly shows that Plaintiff was diagnosed with occipital neuralgia. A remand is required for an appropriate review of the evidence on this point and the need for accommodating limitations in the RFC.

Next, Plaintiff argues that the ALJ improperly weighed Dr. Boen's medical opinion. The RFC determination represents the most a claimant can do despite her limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment is an administrative finding, not a medical opinion.

11

SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.). The determination of an individual's RFC need not be based on a specific medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (providing that an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making [his] RFC determination). Although the ALJ must give consideration to the opinions of medical sources in evaluating whether a claimant is disabled, the final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the Agency. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

The ALJ gave "some to significant weight" to the psychological consultative examination of Dr. Boen (Tr. 88, 642-645). Dr. Boen determined that Plaintiff could understand and remember instructions on a job, she would be able to concentrate and stay on task, and she would have trouble getting along with co-workers and supervisors. *Id*. The ALJ determined that Dr. Boen's opinions were generally vague and not stated in vocational terms (Tr. 88). Nevertheless, the ALJ found that the opinions were generally consistent with the medical record as a whole, and Dr. Boen did not provide any limitations beyond those already accounted for in the residual functional capacity (Tr. 88). The ALJ noted that Dr. Boen was a mental health specialist who had the advantage of personally evaluating the claimant before completing this assessment (Tr. 88).

Plaintiff argues that the record showed that she has had situations happen at multiple workplaces that interrupt her ability to work, including explosive incidents and panic attacks, which led to jobs ending prematurely. Plaintiff also argues that Dr. Boen's opinion aligned with

the opinions of Plaintiff's counselors, Lauren Laroe, Monica Japia, and Willa Stark, and Plaintiff's Global Assessment of Functioning (GAF) scores. However, the ALJ gave no controlling weight to the treating source opinions/mental capacity evaluations completed by Ms. Laroe, Ms. Japia, and Ms. Stark (Tr. 88, 722-729, 817, 818). The ALJ noted that Ms. Laroe determined that Plaintiff had mostly moderate level limitations, such as in maintaining socially acceptable behavior, and marked limitations in working a normal schedule and maintaining regular attendance, with related difficulty sustaining a job due to distractibility and anxiety (Tr. 88, 722-729). Ms. Stark determined that Plaintiff had mostly moderate to mild mental limitations, such as mild limits in carrying out simple instructions and moderate limits in understanding detailed instructions (Tr. 88, 817). Finally, the ALJ noted that Ms. Japia assigned Plaintiff with almost all marked level mental limitations such as in sustaining an ordinary routine without special accommodations (Tr. 88, 818).

The ALJ discounted these opinions, noting that Ms. Laroe, Ms. Japia, and Ms. Stark were not psychologists or psychiatrists, and therefore not acceptable medical sources to opine on Plaintiff's mental functioning or abilities (Tr. 88). *See* 20 C.F.R. §§ 405.1527, 416.927. Nevertheless, the ALJ found that Ms. Stark's assigned mild to moderate mental limitations were generally consistent with the medical record as a whole, and the psychological consultative examination of Dr. Boen as described above (Tr. 88). However, the ALJ found that the assessments of Ms. Laroe and Ms. Japia were generally inconsistent with the medical record as a whole, including Plaintiff's history of medical non-compliance and substance abuse that had worsened her symptoms, her positive response to her psychiatric medications, and her ability to function well in public places such as going to her daughter's wedding, the zoo, and spending

13

time with her boyfriend (Tr. 88). In addition, the ALJ noted that Ms. Laroe's conclusion that Plaintiff could not sustain a job was an opinion reserved for the Commissioner, and was internally inconsistent with her other moderate level mental health limitations (Tr. 89). An ALJ can reject a treating source's opinion if it is inconsistent with other substantial evidence. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). Further, the final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the Agency. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The Commissioner argues that the ALJ properly assigned some weight to the opinions of Ms. Stark, and little weight to the opinions of Ms. Laroe and Ms. Japia.

Plaintiff argues that the ALJ erroneously weighed Dr. Boen's opinion, citing Dr. Kidder's psychological treatment of Plaintiff, and asserting that his opinion that she would have trouble with sustained work activity aligned with Dr. Boen's. Dr. Kidder's opinion focused primarily on Plaintiff's exertional limitations, but he concluded that Plaintiff could not perform sustained work activity (Tr. 89, 715-717)The ALJ's rejection of Dr. Boen's opinion of these issues is confusing, at best. As Plaintiff obviously has severe mental issues, the court will remand for a re-assessment of Dr. Boen's opinion.

Lastly, Plaintiff argues that the ALJ improperly emphasized her activities of daily living and over-emphasized her non-compliance with medication. As part of her RFC determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record for the reasons explained in the decision (Tr. 88). "An ALJ is in the best

position to determine a witness's truthfulness and forthrightness; thus, this Court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). The regulations and SSR 16-3p set forth the Agency's policy for evaluating a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ considered Plaintiff's reported activities of daily living, along with a host of factors, including Plaintiff's statements to medical providers, her hearing testimony, and the medical evidence of record. The ALJ opined that the nature and degree of pain and functional limitations alleged by Plaintiff was not supported by medical and non-medical sources (Tr. 87). The ALJ stated that Plaintiff's diagnostic test results and physical examination findings had been largely unremarkable, and noted that a physical examination performed in 2016 revealed that Plaintiff had decreased range of motion in the cervical spine, she was able to flex slightly and rotate her neck, she appeared to be well developed and well nourished, and neurological findings were normal (Tr. 87, 1118). Moreover, the ALJ noted that Plaintiff engaged in a variety of daily and public activities that indicated a greater level of functioning than alleged (Tr. 87). For example, Plaintiff reported engaging in public activities such as going shopping by herself and visiting the nail salon, going to the Fort Wayne Zoo, attending her daughter's bridal shower and a family reunion, attending her daughter's rehearsal dinner and wedding, and being gone for about one month with her boyfriend (Tr. 87, 662, 952, 958, 1245). The ALJ also noted that although Plaintiff had a comfort dog at the hearing, he concluded that the dog was not medically necessary in a workplace based on Plaintiff's testimony that she did not take her dog with her when she went out in public until recently, and due to a dispute with her landlord about the dog (Tr. 88).

Plaintiff argues that in evaluating her symptoms, the ALJ placed too much emphasis on her daily activities in contravention on the principles set forth in *Bjronson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), and other cases which generally hold that a claimant's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessary translate into an ability to work full-time. Plaintiff points to her allegations of fatigue after she completes household chores and that she requires assistance with shopping and "heavy" cleaning.

Plaintiff also argues that the ALJ apparently concluded that her symptoms would have remained under control but for an unwillingness to take her medications as directed (noncompliance). However, the ALJ did not emphasize that Plaintiff failed to take her medication; rather, the ALJ highlighted that Plaintiff supplemented her prescribed medication with marijuana. The ALJ noted that Plaintiff had a prolonged history of noncompliance with medical recommendations, further eroding the consistency of her allegations (Tr. 87). For example, the ALJ noted that Plaintiff testified that she used marijuana once to three times per week, and although she decreased her use in the past six months to a year, she was nevertheless noted as using substances during the times of inpatient psychiatric stays and periods of symptom exacerbation (Tr. 87-88, 1316-1319, 1323-1347).

As this case is being remanded on other issues, the court will also remand on the issues of daily activities and medical noncompliance/substance abuse.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: May 30, 2019.

                                                            s/ William C. Lee
                                                            William C. Lee, Judge
                                                            United States District Court